UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAREN HAMBURG, ) | CASE NO. C04-1979-MJP |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | RE: SOCIAL SECURITY |
| JO ANNE B. BARNHART, Commissioner ) | DISABILITY APPEAL |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Karen Hamburg proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance (DI) benefits and partially denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).

Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be REMANDED for further administrative proceedings as to the period between November 14, 1999 and June 5, 2002.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on November 18, 1952. She graduated from high school and has completed some college work. Plaintiff previously worked as a storeroom clerk, sales clerk, and electronics technician. Plaintiff last worked in 1996, and was last insured for DI benefits on June

30, 2000.

Plaintiff previously applied for SSI and DI benefits in 1998, alleging disability since September 30, 1996. Those claims were denied initially and on reconsideration by the Commissioner. ALJ David Delaittre held a hearing on these applications on October 6, 1999. Plaintiff was represented by counsel at that hearing. In a decision dated November 13, 1999, ALJ Delaittre found that plaintiff was not disabled for any period through the date of the decision. (AR 281-98.) Plaintiff appealed the decision to the Appeals Council, which denied review on March 23, 2001. Plaintiff did not pursue further appeals in that matter.

In May 2001, plaintiff again filed applications for SSI and DI benefits. As before, she alleged a disability onset date of September 30, 1996. The Commissioner denied plaintiff's applications initially and on reconsideration. ALJ Donald Krainess held a hearing on December 22, 2003 and heard testimony from: (1) plaintiff; (2) medical expert Robert Nielsen, M.D.; (3) vocational expert Stephen Van Houten; and (4) plaintiff's brother Michael Hamburg. (AR 811-58.) Plaintiff appeared without representation at this hearing.

On April 19, 2004, ALJ Krainess issued a written decision. (AR 16-26.) He held that the issue of disability through November 13, 1999 had been addressed by the previous ALJ decision and that the doctrine of *res judicata* applied to the issue of disability through that date. ALJ Krainess concluded that plaintiff was not under a disability as defined in the Social Security Act through June 5, 2002, but that she has been under a disability since June 6, 2002 and continuing through the date of the decision. Because plaintiff's eligibility for DI benefits ended on June 30, 2000, plaintiff was not entitled to DI benefits as a result of this decision. However, she was eligible for SSI benefits as of June 6, 2002.

Plaintiff appealed ALJ Krainess's decision to the Appeals Council. On July 29, 2004, the Appeals Council found no reason to review the ALJ's decision. (AR 8-10.) As a result, the ALJ's decision became the final decision of the Commissioner. Plaintiff then appealed the Commissioner's decision to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff not gainfully employed since her alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found that plaintiff's sarcoidosis, fibromyalgia, hypertension, obesity, and depression were severe impairments. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed plaintiff's RFC and found that plaintiff could not perform her past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ found that plaintiff was capable of performing other work until June 5, 2002, but that she was not capable of performing other work as of June 6, 2002.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and his findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

2002).

In this case, plaintiff asserts that the Commissioner's decision should be reversed with respect to the period before June 6, 2002. Plaintiff alleges that the ALJ erred in: (1) refusing to reopen her prior application for benefits; (2) applying the presumption of continuing nondisability for the period between November 14, 1999 to June 5, 2002; (3) determining a disability onset date of June 6, 2002 without the assistance of a medical expert; (4) assessing the medical and lay evidence; (5) assessing plaintiff's credibility; (6) assessing plaintiff's RFC; (7) evaluating the severity of her mental impairments; and (8) relying exclusively on the Medical Vocational Guidelines to make a determination at step five. Plaintiff seeks remand for an award of benefits. The Commissioner asserts that the ALJ's decision was supported by substantial evidence and free of legal error.

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

### Plaintiff's Request to Reopen Prior Application

Plaintiff suggests that ALJ Krainess erred by declining to reopen her application for benefits, which had been denied in a decision dated November 13, 1999. In the concluding section of her opening brief, she argues:

> [P]laintiff's prior application should be reopened based upon the new evidence submitted in this case and the testimony presented at the hearing, 20 CFR § § 404.988-9. A reopening is also appropriate when a mental impairment could have interfered with plaintiff's ability to understand the nature and importance of the appeal requirements following the ALJ's decision and the AC's [Appeal Council's] denial of

her first applications. *See,* Roesch v. Apfel, 17 F. Supp. [2d] 1080, 1088 (D. Neb. 1998) (A claimant who is disabled due to a mental impairment may raise a "colorable constitutional claim of denial of due process of law" when the Commissioner fails to reopen a prior application.).

(Dkt. 12, at 20-21.) Plaintiff offers no further argument on this point in her reply brief.

Plaintiff's rather cursory argument on this issue is not persuasive. "Generally, courts do not have jurisdiction to review the [Commissioner's] decision not to reopen a previously adjudicated claim." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). Here, ALJ Krainess indicated that he did not find sufficient cause to reopen plaintiff's prior application and expressly disclaimed any intent to conduct a *de facto* reopening of her prior claim. (AR 17.)

The Court may review the Commissioner's decision not to reopen a final benefits determination if the claimant presents a "colorable constitutional claim of [a] due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." *Rolen v. Barnhart*, 273 F.3d 1189, 1191 (9th Cir. 2001). However, plaintiff does not provide any support for her oblique suggestion that she lacked the mental ability to understand the nature and importance of appeal requirements. Plaintiff testified at the hearing that she had taken college level classes from 1999-2001 and had a grade point average of 3.8. (AR 816-18.) In addition, plaintiff was represented by counsel at her first ALJ hearing (AR 281) and was able, apparently on a *pro se* basis, to file a request for review of the first ALJ decision with the Appeals Council. (AR 27-28.) In denying review, the Appeals Council provided plaintiff with instructions regarding her appeal rights. (AR 305-06.) Under these circumstances, the Court cannot conclude that plaintiff was denied due process.

<u>Presumption of Continuing Nondisability</u>

Under Ninth Circuit law, ALJ Delaittre's November 13, 1999 finding that plaintiff was not disabled created a presumption that she could continue to work after that date. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996). However, this presumption of continuing nondisability may be rebutted if there are "changed circumstances." *Id.* In this case, ALJ Krainess made the

following findings regarding the presumption of continuing nondisability and changed circumstances:

> Pursuant to law, I must presume that the claimant has continued to be not disabled [since] November 13, 1999, unless she can show changed circumstances indicating a greater level of disability or a relevant change in applicable law, regulations or rulings since that date (Acquiescence Ruling (AR) 97-4(9); Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988). Here, a review of the evidence does not demonstrate any changed circumstances since the earlier decision, until April 11, 2002. I have concluded that the claimant has been disabled since June 6, 2002, and that she was not disabled before that date.

(AR 17.) ALJ Krainess also stated that "[f]rom November 14, 1999 through April 10, 2002, there is no evidence to show a worsening of the claimant's physical or mental condition. However, beginning on April 11, 2002, the claimant was significantly more impaired."[1] (AR 19.)

As the ALJ noted, the Social Security Administration (SSA) issued a ruling (Acquiescence Ruling 97-4(9)) regarding the presumption of continuing nondisability in cases where a plaintiff files a new disability claim after a previous application had been denied. This ruling provides:

> When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing nondisability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption. A claimant may rebut the presumption by showing a "changed circumstance" affecting the issue of disability with respect to the unadjudicated period, *e.g.*, a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability.

Acquiescence Ruling 97-4(9).

Here, plaintiff argues that the ALJ erred in finding that there had not been a change in her circumstances prior to April 11, 2002. She raises several arguments in support of this position.

1. *Impairments Not Previously Considered*

The November 1999 decision on plaintiff's previous application for benefits found that fibromyalgia was plaintiff's only severe impairment. (AR 296.) In contrast, plaintiff notes that

---

[1] The ALJ's finding that plaintiff was more impaired on April 11, 2002 appears to be based on treatment notes from that date by social worker Chris Storey. (AR 747-48.)

01 the 2004 decision found that she had several additional severe impairments, including sarcoidosis,
02 obesity, hypertension, and depression. (AR 24.)  In the 1999 decision, the ALJ considered
03 evidence regarding the severity of plaintiff's depression and hypertension, but concluded that these
04 were not severe impairments. (*See* AR 284 (hypertension not a severe impairment) and AR 284-
05 88 (depression not a severe impairment)).  However, the November 1999 decision did not
06 consider plaintiff's obesity[2] or sarcoidosis.  Indeed, it appears that plaintiff's sarcoidosis was not
07 even diagnosed until January 2001 (AR 19), more than a year after the November 1999 decision.

08       Under Acquiescence Ruling 97-4(9), a plaintiff may rebut the presumption of continuing
09 nondisability through "the alleged existence of an impairment(s) not previously considered." *See*
10 *also Lester*, 81 F.3d at 827 (noting that changed circumstances may be found "where the claimant
11 raises a new issue, such as the existence of an impairment not considered in the previous
12 application").  Here, plaintiff's sarcoidosis and obesity were impairments that had not been
13 previously considered in the November 1999 decision.  As such, the Court concludes that these
14 new impairments are sufficient to rebut the presumption of continuing nondisability.

15 2.    *Change In Criteria for Determining Disability*

16       Plaintiff also notes that, after the November 1999 decision, the SSA adopted Social
17 Security Ruling (SSR) 02-01p, a new ruling regarding the evaluation of obesity in disability claims.
18 The SSA adopted this ruling on September 12, 2002. Acquiescence Ruling 97-4(9) provides that
19 changed circumstance may be based on "a change in the criteria for determining disability."  As
20 such, the Court also concludes that SSR 02-01p constitutes a change in criteria and provides an
21 additional reason to find that plaintiff has rebutted the presumption of continuing nondisability.

22 3.    *Change in Age Category*

23       Plaintiff argues that there has been a change in circumstances due to a change in her age
24 category. The Ninth Circuit has held that a change in the claimant's age category, as defined in

---

[2] Plaintiff weighed 256 pounds in April 1998 (AR 143, 146), similar to her weight of 270 pounds at the time of the second hearing (AR 19).

the SSA's Medical-Vocational Guidelines, constitutes a changed circumstance that overcomes the presumption of continuing nondisability. *See Lester*, 81 F.3d at 827.  Here, plaintiff was a few dates short of her 47th birthday when the first ALJ decision was issued on November 13, 1999.[3] Plaintiff turned 50 years old on November 18, 2002.  Under the Medical-Vocational Guidelines, persons who are 50-54 are deemed to be individuals "closely approaching advanced age" and are in a different age category than persons 45-49 years old.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(g) & (h).

However, the ALJ found that plaintiff was disabled as of June 6, 2002.  Plaintiff was 49 years old on that date.  As such, there was no change in circumstance regarding her age category until several months *after* the disability onset date identified by the ALJ.  Therefore, the change in plaintiff's age category cannot be regarded as a change in circumstance for the period between November 14, 1999 and June 5, 2002.

4.   *Increase in Severity of Depression and Fibromyalgia*

Acquiescence Ruling 97-4(9) also provides that a claimant can rebut the presumption of continuing nondisability by showing an increase in the severity of her impairment(s).  Plaintiff argues that her depression and fibromyalgia became more severe between November 14, 1999 and April 10, 2002.  (Dkt. 15, at 2.)

To support the argument as to her fibromyalgia, plaintiff notes that Chris Storey, a social worker, opined in January 2000 that plaintiff was disabled due to her fibromyalgia.  However, as discussed in the section of this report and recommendation regarding the ALJ's evaluation of medical and lay evidence, the ALJ offered sufficient reasons to discount Mr. Storey's January 2000 opinion.

Plaintiff also argues that her depression became more severe, noting that she was

---

[3] The November 13, 1999 decision incorrectly states that plaintiff was 47 years old at the time of the decision.  (AR 295.)  This is because the ALJ incorrectly identified plaintiff's birthday as November 8, 1952, rather than November 18, 1952.

01 hospitalized for depression in February 2001. However, the ALJ considered this point and found
02 as follows:

> In February 2001 Jennifer Olson, M.D., and Molly Shores, M.D., assessed the claimant with a depressive disorder and a GAF ([Global Assessment of Functioning]) of 35 [AR 556-57], and she was admitted for inpatient treatment. The claimant was discharged after a few days, significantly improved and with a GAF of 65 [AR 529-31]. That brief hospital admission suggests that the claimant may have had a significant exacerbation of depressive symptoms, but it was short-lived and her depression was not a severe impairment for the requisite durational requirement. This episode was apparently related to a sleep disturbance and vague suicidal thought; the claimant's mental status functioning was otherwise intact [AR 549-52].

08 (AR 20). Although this evidence could be subject to different interpretations, the undersigned
09 finds the ALJ's assessment on this issue sufficiently rational to be upheld. *See, e.g.*, *Morgan v.*
10 *Apfel*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one
11 rational interpretation, it is the ALJ's conclusion that must be upheld").

12 Therefore, plaintiff fails to rebut the presumption of continuing nondisability by showing
13 an increase in the severity of her impairments.

### Disability Onset Date

15 Plaintiff argues that ALJ Krainess erred by determining plaintiff's disability onset date
16 without the assistance of a medical expert. Although Dr. Robert Nielson testified as a medical
17 expert at the hearing, it appears that Dr. Nielson had not reviewed all records and that he offered
18 no testimony that would assist in establishing a disability onset date. (AR 841-49.) In addition,
19 it does not appear that Dr. Nielson felt he could evaluate plaintiff's mental impairments, given that
20 he stated that he could not comment on the question of whether plaintiff's mental impairments met
21 or equaled a listed impairment. (AR 843.)

22 SSR 83-20 discusses when an ALJ should call a medical expert to assist in establishing a
23 disability onset date. The Ninth Circuit has held that if the "medical evidence is not definite
24 concerning the onset date and medical inferences need to be made, SSR 83-20 *requires* the
25 administrative law judge to call upon the services of a medical advisor and to obtain all evidence
26 which is available to make the determination." *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir.

REPORT AND RECOMMENDATION RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -9

1991) (emphasis added); *see also Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) ("where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date"); *Morgan v. Sullivan*, 945 F.2d 1079, 1083 (9th Cir. 1991) (inferring a disability onset date "is not possible without the assistance of a medical expert").

The Commissioner suggests that the medical evidence in the record is sufficiently definite to establish June 6, 2002 as the disability onset date, without the need for any inferences. However, there is no basis in the record to conclude that plaintiff suddenly became disabled on June 6, 2002. Instead, it appears the ALJ selected June 6, 2002 as the disability onset date based on a report completed in June 2002 by Dr. Richard Reed. In this report, Dr. Reed opined:

> Ms. Hamburg is not competitively employable due to a combination of psychological and medical conditions that directly contributed to exacerbation of her mood disorder. Her medical conditions are chronic and are not likely to be resolved in the near future. Chronic pain and the side effects of the numerous medications she is required to take contribute significantly to her depression.

(AR 723a).[4] Dr. Reed did not suggest that plaintiff had become disabled on June 6, 2002. Instead, it appears from the record as a whole that plaintiff had been treated for many years for multiple impairments, which in combination eventually became disabling. As a result, the onset date of plaintiff's disability cannot be determined with precision and must be inferred. Under Ninth Circuit law, an ALJ cannot make such an inference without the assistance of a medical expert.[5]

---

[4] The administrative record does not include a number for the page on which this opinion is found. Since this page is between AR 723 and AR 724, it is referred to here as AR 723a. It should also be noted that this opinion (dated June 5, 2002) appears to be an attachment to a disability report that Dr. Reed submitted to the Washington Department of Social and Health Services on June 6, 2002. (AR 779-82.)

[5] Plaintiff suggests that the Court should infer an onset date of January 2000 based on the opinion of social worker Chris Storey (AR 481-82) and remand for an award of benefits based on such an inference. However, Mr. Storey is not an acceptable medical source, and this Court is in no better position than the ALJ to infer an onset date without the assistance of testimony from a

REPORT AND RECOMMENDATION RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -10

Therefore, on remand, the ALJ must obtain the assistance of a fully prepared medical expert to infer a disability onset date. The medical expert should be qualified to assess both plaintiff's physical and mental impairments.

<u>Medical and Lay Evidence</u>

As discussed below, plaintiff also argues that the ALJ erred in discounting evidence from a number of medical sources and lay persons.

1. *Chris Storey, ACSW*

Chris Storey is a social worker who counseled plaintiff. The ALJ largely rejected evidence from Mr. Storey regarding plaintiff's conditions between 2000-2001. The ALJ offered the following reasons for discounting statements from Mr. Storey during this time period:

> In January 2000 Chris Storey, ACSW, reported that the claimant was vocationally disabled because of depression and fibromyalgia [AR 481-82]. However, Mr. Storey is not an acceptable medical source and that report contains only vague conclusions without clinical support. Mr. Storey pointed out that the claimant had done very well with medication, and had returned to school to study technical writing. She had performed well, academically [AR 481-82; 349]. This report does not support a finding of severe depression or disability. The claimant's history of depression was thoroughly examined in the earlier decision and Mr. Storey's notes do not support a finding that her condition had worsened.
>
> Mr. Storey made a similar assessment of disability in August 2000, but that comment is given little weight for the same reasons discussed above [AR 465]. The claimant continued to attend school, which supports a conclusion that she was capable of the same residual functional capacity as determined in the prior decision.
>
> * * *
>
> . . . in June 2001, the claimant said that she was feeling quite well, except for her fibromyalgia pain [AR 510-11]. Mr. Storey continued to assess the cla[i]mant as unable to work, but his comments are conclusory and not supported by specific findings [AR 582].

(AR 19-20.)[6] As the ALJ noted, Mr. Storey is not an "acceptable medical source" under Social

---

medical expert.

[6] However, the ALJ credited a later opinion from Mr. Storey, finding that "on April 11, 2002, Mr. Storey pointed out that the claimant had moderate difficulties interacting with others,

Security regulations. 20 C.F.R. 404.1513. As such, his testimony must be given the weight of lay evidence. The Ninth Circuit has held that "lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ noted that Mr. Storey's statements regarding plaintiff's ability to work were conclusory. The ALJ also pointed to other facts arguably inconsistent with Mr. Storey's view that plaintiff was disabled. These are sufficient reasons for discounting Mr. Storey's opinions. *See Lewis*, 236 F.3d at 512 (upholding rejection of lay testimony where the ALJ offered "arguably germane" reasons).

2.  *Dr. Keith Rogers*

The ALJ also discounted opinions from Dr. Keith Rogers, who was either an examining or a treating physician. Dr. Rogers evaluated the plaintiff on February 27, 2001, after she had been hospitalized due to depression. The ALJ assessed Dr. Rogers' opinions as follows:

> In February 2001 Keith Rogers, M.D., reported that the claimant's major depressive disorder caused marked and severe cognitive and social limitations [AR 634-38]. That report was prepared on a check-box form and did not refer to clinical findings. To be fair, Dr. Rogers based some of his comments on "observations" of the claimant during her inpatient stay [AR 634-38]. But this assessment is inconsistent with the claimant's discharge GAF of 65, and with treatment notes showing that she was stable on medication [AR 571-633]. Dr. Rogers' report is not entirely persuasive.

(AR 20.) Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Lester*, 81 F.3d at 830. Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-

---

and chronic pain, fatigue and loss of energy that prevented competitive work [AR 747-48]. His report is consistent with later examination notes, and merits a fair degree of weight." (AR 21) (internal citations omitted).

SECURITY DISABILITY APPEAL
PAGE -12

31.

The ALJ first noted that Dr. Rogers' report was "prepared on a check-box form and did not refer to clinical findings." The Commissioner notes that in *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996), the Ninth Circuit held that an ALJ may reject "check-off reports that [do] not contain any explanation of the bases of their conclusion." *But see Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (holding that if ALJ felt that he could not discern basis for physician's opinion from "check-the-box" answers, ALJ had duty to develop the record regarding the basis for physician's opinion). However, Dr. Rogers did not simply check off boxes in his report; instead, he explained the basis for his conclusions as "observation on inpatient psychiatry unit in consultation with outpatient treatment providers." (AR 636.) As such, *Crane* is not on point.

The Commissioner also notes that an ALJ may reject a physician's opinions if they are brief and conclusory and not supported by clinical findings. *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). Here, Dr. Rogers' opinions were somewhat brief and conclusory. Although Dr. Rogers stated that he based his assessment on observation of plaintiff and consultation with other providers, his opinions about plaintiff's limited functioning do not appear to be supported by clinical findings.

The ALJ also discounted Dr. Rogers' opinions on the grounds that "treatment notes" showed that plaintiff was stable on medication. The ALJ supported this finding by citing generally to a 63 page exhibit (AR 571-633), which contained several months of plaintiff's treatment notes from 2001-2002. There are indications in these notes that plaintiff's depression was "fairly stable" (AR 580) and that her mood was improved (AR 577, 633). At the same time, there are also notations in this exhibit that indicate that plaintiff had more anxiety (AR 577) and that her mood had worsened (AR 588).

In addition, the ALJ noted that plaintiff's GAF was 65 when she checked herself out of the hospital on February 21, 2001, shortly before Dr. Rogers completed his report. (AR 529.) A GAF score of 61-70 generally does not indicate severe limitations in functioning. *See, e.g.*, *Sims*

*v. Barnhart*, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (noting that a GAF score of 61-70 reflects mild symptoms or some difficulty in social, occupational, or school functioning, but the individual "generally function[s] pretty well).

The undersigned concludes that the ALJ offered sufficient reasons to discount Dr. Rogers' opinions. In particular, plaintiff's GAF score of 65 when she was discharged on February 21, 2001 suggests that her functioning was not as significantly limited as Dr. Rogers opined a few days later.

3. *Karen Huisinga, ARNP*

The ALJ also discounted opinions from Karen Huisinga, a nurse practitioner who treated plaintiff. The ALJ addressed her opinions as follows:

> Karen Huisinga, MN, ARNP, reported on March 20, 2001 that the claimant's health problems had become more severe and she should not stay in class [AR 638]. In May 2001, Ms. Huisinga stated that the claimant was severely limited, unable to stand/walk or lift even two pounds [AR 639-40]. Ms. Huisinga is not an acceptable medical source and her comments were not supported by clinical findings; she was only conclusory. Indeed, the treatment notes from Ms. Huisinga and other examiners around that time did not suggest disabling symptoms; she had improved mood and energy [AR 577]. These reports are not convincing.

(AR 20.) Under Social Security regulations, Ms. Huisinga is not regarded as an acceptable medical source. As discussed above, an ALJ may discount a lay witness's testimony by offering germane reasons for doing so. The undersigned finds the reasons cited by the ALJ sufficient under this standard.

Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found "the claimant's statements [] not entirely credible in light of the medical reports and other evidence of record." (AR 19.) This general finding is not followed by discussion of the specific testimony the ALJ found to be not entirely credible. Nor does the ALJ identify which medical reports or other evidence of record render plaintiff's testimony less than fully credible.[7] As such, the ALJ failed to offer sufficient reasons to reject plaintiff's testimony.

A claimant's testimony may be credited as true where the ALJ improperly rejects the claimant's testimony as to his or her limitations. *Lester*, 81 F.3d at 834 ("[W]here the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.' Rather, that testimony is also credited as a matter of law.") (internal citations omitted) (quoting *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988)). However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony

---

[7] Later in the decision, the ALJ notes that "[t]he claimant reported in June 2001 that she could do some household chores, laundry, and cleaning, but at a slow pace and with frequent rest breaks. [AR 369-76]. But at that time she was attending school, earning a 3.7 GPA [AR 471]." (AR 22.) However, it is not clear that the ALJ felt that this evidence caused him to reject any specific testimony by plaintiff.

REPORT AND RECOMMENDATION RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -15

should be credited as true).  In this case, it is not clear that plaintiff would be found disabled prior to June 6, 2002 even if her testimony were credited as true.  Therefore, a remand for further administrative proceedings is appropriate.

<u>RFC Assessment</u>

Plaintiff also alleges that the ALJ failed to assess her residual functional capacity (RFC) in the manner required by SSR 96-8p.  The ALJ found that plaintiff retained the capacity to perform light work until June 6, 2002. (AR 22.)  This is the same RFC assessment rendered in the previous ALJ decision.

The Commissioner argues that, for the period between November 14, 1999 and June 5, 2002, ALJ Krainess was required to adopt the RFC determination previously made by ALJ Delaittre because plaintiff had not rebutted the presumption of continuing nondisability for that period. (Dkt. 14, at 13.) However, as discussed above, the ALJ erred in finding that plaintiff had not rebutted the presumption of continuing nondisability.

It should be noted, however, that AR 97-4(9) appears to provide that, even if a plaintiff rebuts the presumption of continuing nondisability, an ALJ adjudicating a subsequent claim must give effect to the RFC finding that was made in the prior decision unless there is new and material evidence or a change in applicable law that would affect the RFC finding.  The rule provides:

> Adjudicators must adopt a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

AR 94-4(9) (emphasis added).

Here, there appears to be both new and material evidence and a change in applicable law that would affect the RFC finding from the 1999 decision.  As discussed earlier, the SSA adopted a new ruling (SSR 02-01p) regarding the evaluation of obesity after ALJ Delaittre's November 1999 decision.  SSR 02-01p notes that obesity may cause a number of functional limitations and provides that "[a]s with any other impairment, we will explain how we reached our conclusions

on whether obesity caused any physical or mental limitations." No such explanation was provided here. In addition, plaintiff's sarcoidosis was diagnosed after the November 1999 ALJ decision, which may have affected plaintiff's RFC.

Given the above, the ALJ could not adopt the RFC finding from the prior decision for the period between November 14, 1999 and June 5, 2002. On remand, the ALJ should reassess plaintiff's RFC for this period in a manner consistent with the requirement of SSR 96-8p.

### Evaluation of Mental Impairments

Plaintiff also argues that the ALJ erred in evaluating her mental impairments. Plaintiff notes that under 20 C.F.R. § 1520a, a special technique must be applied to evaluate the severity of mental impairments. Under this technique, plaintiff's functional limitations in four broad areas must be rated: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. § 1520a(c)(3). Social Security regulations also provide that "[a]t the administrative law judge hearing . . . we will document application of the technique in the decision." 20 C.F.R. § 1520a(e). The regulations further provide that an ALJ decision "must include a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 1520a(e)(2). Plaintiff asserts that the ALJ did not document the application of the technique in the decision, nor did he make specific findings as to the degree of limitation in each of the functional areas. The Commissioner does not dispute these points.

The Commissioner may believe that the ALJ was not required to apply the technique required by § 1520a due to the presumption of continuing nondisability. As discussed above, however, plaintiff has rebutted that presumption.[8] Therefore, on remand the ALJ should apply and

---

[8] It should also be noted that, in August 2001, state agency psychologist Terilee Wingate completed a report in which she documented that application of the technique required by § 1520a. (AR 660.) Dr. Wingate found that plaintiff had moderate difficulty with concentration, persistence, or pace; mild limitations in social functioning and activities of daily living; and one or two episodes of decompensation. *Id.* The ALJ did not reject this report, but found that "the conclusions of Dr. Wingate would be consistent with the findings of the judge in the prior decision." (AR 22.) However, ALJ Delaittre found that plaintiff "would *seldom* have deficiencies

document the application of the technique required by 20 C.F.R. § 1520a for the period between November 14, 1999 and June 5, 2002.

### Step Five

Finally, plaintiff argues that the ALJ erred at step five by using the Medical-Vocational Guidelines (also known as the "grids") at 20 C.F.R. pt. 404, subpt. P, app. 2, to find that plaintiff was capable of performing other work in the national economy through June 5, 2002. Plaintiff argues that the grids could not be used because she has significant non-exertional limitations that are not contemplated by the grids, including pain; an inability to sit or stand for prolonged periods and a need to alternate positions; postural limitations; depression and reduced concentration; and reduced stamina and pace from fatigue. (Dkt. 12, at 8.) The Commissioner argues that the use of the grids was appropriate because plaintiff had no significant non-exertional limitations.

The Court need not determine whether the ALJ erred in relying on the grids at step five, given the need to remand this matter for further administrative proceedings for the reasons discussed above. Plaintiff's RFC for the period between November 14, 1999 and June 5, 2002 must be reassessed in accordance with SSR 96-8p. If the RFC includes non-exertional limitations that significantly limit the range of work permitted by plaintiff's exertional limitations, the ALJ may not rely exclusively on the grids to make a step five determination. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988).

### **CONCLUSION**

This matter should be remanded for further administrative proceedings for the period between November 14, 1999 and June 5, 2002. On remand, the ALJ should reassess plaintiff's claims in accordance with the deficiencies outlined above. In conducting further proceedings, the ALJ should call a medical expert to assist in inferring a disability onset date, as well as a vocational

---

of concentration, persistence and pace." (AR 287) (emphasis added). As such, Dr. Wingate's conclusions cannot be regarded as consistent with ALJ Delaittre's findings.

expert to assist as needed with a step five determination.

DATED this  19th  day of  May , 2005.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE: SOCIAL
SECURITY DISABILITY APPEAL
PAGE -19